## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CHRISTOPHER J.,                          )
                                         )
    Plaintiff,       )
                                         )
  v.                            )  1:23CV743
                                         )
MARTIN J. O'MALLEY,                      )
Commissioner of Social                   )
Security,                                )
                                         )
    Defendant.[1]     )

## MEMORANDUM OPINION AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Christopher J., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) The Commissioner has filed the certified administrative record (Docket Entry 5 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 11 (Plaintiff's Brief); Docket Entry 13 (Commissioner's

---

[1] On December 20, 2023, President Joseph R. Biden, Jr., appointed Martin J. O'Malley as Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should substitute for Kilolo Kijakazi as Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Brief)). For the reasons that follow, the Court will enter judgment for the Commissioner.[2]

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB (Tr. 171-72), alleging a disability onset date of November 30, 2021 (see Tr. 171). Upon denial of that application initially (Tr. 65-73, 82-86) and on reconsideration (Tr. 74-81, 94-98), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 99-100). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 33-64.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 12-32.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 164-670), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2026.

2. [Plaintiff] has not engaged in substantial gainful activity since November 30, 2021, the alleged onset date.

3. [Plaintiff] has the following severe impairments: degenerative disc disease; degenerative joint disease; tinnitus; migraines; obstructive sleep apnea; anemia; ulcerative pancolitis; post-traumatic stress disorder.

---

[2] On consent of the parties, "this case [wa]s referred to the [undersigned] United States Magistrate Judge . . . to conduct all proceedings . . ., to order the entry of judgment, and to conduct all post-judgment proceedings therein." (Docket Entry 9 at 1.)

2

. . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] has the residual functional capacity to perform light work . . . with the following provisos: [he] can frequently reach in all directions, push, pull, operate hand controls, handle, finger, and feel with the upper extremities; frequently push, pull, and operate foot controls with the lower extremities. He can frequently climb ramps or stairs: occasionally climb ladders, ropes, or scaffolds; frequently balance; occasionally stoop, kneel, crouch, or crawl. He must avoid concentrated exposure to workplace hazards, such as dangerous moving machinery and unprotected heights. He can understand and perform simple, routine, repetitive tasks; maintain concentration, persistence, and pace to stay on task for 2-hour periods over course of a typical 8-hour day with normal work breaks in order to perform such tasks, in a low stress setting, further defined to mean no production-pace or quota-based work; he requires a goal-oriented job primarily dealing with things instead of people with no more than occasional social interaction as part of the job with supervisors, co-workers, and the public.

. . .

6. [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [he] can perform.

. . .

> 11. [Plaintiff] has not been under a disability, as
> defined in the . . . Act, from November 30, 2021, through
> the date of this decision.

(Tr. 17-27 (footnote, bold font, and internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of

4

more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any

5

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174

---

[3] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

F.3d 473, 475 n.2 (4th Cir. 1999).[4]  A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry.  For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[5]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled.  Id. at 179-80.  However, if the

---

[4] "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

7

claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[6]

## B. Assignments of Error

Plaintiff asserts that the Court should overturn the ALJ's finding of non-disability on these grounds:

1) "[t]he ALJ erred by failing to explain what the term 'production-pace' meant in the RFC assessment" (Docket Entry 11 at 5 (bold font and block formatting omitted)); and

2) "[t]he ALJ erred in his evaluation of the medical opinion evidence provided by [Ana] Santos-Burks, NP-BC [('NP Santos-Burks')]" (id. at 6 (bold font and block formatting omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (See Docket Entry 13 at 5-18.)

---

[6] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

8

## 1. Production Pace

In Plaintiff's first issue on review, he argues that "[t]he ALJ erred by failing to explain what the term 'production-pace' meant in the RFC assessment." (Docket Entry 11 at 5 (bold font and block formatting omitted).) In particular, Plaintiff maintains that "the [United States Court of Appeals for the] Fourth Circuit held that the term 'nonproduction pace' is impermissibly vague," because "th[at] term . . . does not have a standard meaning and needs further explanation to illustrate how long and under what circumstances [a] claimant is able to focus [his or her] attention on work activities and stay on task at a sustained rate." (Id. (purporting to quote Thomas v. Berryhill, 916 F.3d 307, 312 (4th Cir. 2019)).)[7] In Plaintiff's view, because "the ALJ also included a restriction to no 'quota-based work[]'" in the RFC, "at face value, the term [no production-pace] seems to indicate that [Plaintiff] neither needs to work at a set pace nor do[es he] need to produce a set amount of work product" (id. (quoting Tr. 22)), which means that Plaintiff "could be engaging in a sheltered, non-

---

[7] The Fourth Circuit in Thomas did not, in fact, deem the phrase "nonproduction pace" impermissibly vague; rather, that court found that the preclusion of "work requiring a production rate or demand pace . . . did not give [the court] enough information to understand what those terms mean," because "those terms appear[ed] in a vanishingly small number of Social Security cases." Thomas, 916 F.3d at 312 (emphasis added) (internal quotation marks omitted). In contrast, the Fourth Circuit has not found the phrase "nonproduction pace" vague or uncommon, and has affirmed cases with RFCs containing such language, see, e.g., King v. Berryhill, No. 3:18CV1, 2019 WL 1317732, at *2 (W.D.N.C. Mar. 22, 2019) (unpublished) ("non-production pace"), aff'd sub nom. King v. Saul, 787 F. App'x 170 (4th Cir. 2019); Michaels v. Colvin, No. 3:15CV388, 2016 WL 8710975, at *1, 7 (W.D.N.C. Mar. 25, 2016) (unpublished) ("nonproduction pace rates"), aff'd sub nom. Michaels v. Berryhill, 697 F. App'x 223 (4th Cir. 2017).

competitive (and thus non-substantial gainful activity) job" (id. (citing 20 C.F.R. § 404.1573(c))). Plaintiff deems the ALJ's error in this regard "particularly harmful given the testimony and evidence in the record detailing how [Plaintiff]'s PTSD impairs his ability to concentrate, persist at tasks, and generally maintain employment." (Id. at 5-6 (citing Tr. 43-44, 56, 228, 480, 907, 916).)

As an initial matter, the VE here did not express any difficulty in understanding the meaning of the ALJ's preclusion of "production pace" or "quota-based" work in responding to the ALJ's dispositive hypothetical question. (Tr. 59.)[8] The VE thereafter provided three jobs that fit within the ALJ's non-production restriction, e.g., ticketer, pricing tagger/marker, and inspector/hand packager (see id.), and, notably, Plaintiff made no attempt in his brief to argue that the corresponding job descriptions in the Dictionary of Occupational Titles ("DOT") for those jobs depicted production-pace or quota-based work. (See Docket Entry 11 at 5-6.) Indeed, none of those DOT

---

[8] Significantly, the Dictionary of Occupational Titles ("DOT") defines "light work" as including "working at a production rate pace":

> [A] job should be rated [l]ight [w]ork . . . when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

DOT, App'x C ("Components of the Definition Trailer"), § IV ("Physical Demands - Strength Rating"), 1991 WL 688702 (emphasis added).

descriptions would compel the Court to find that those jobs actually involved production-pace or quota-based work, see DOT, No. 229.587-018 ("Ticketer"), 1991 WL 672150 (setting forth that employee "[r]ecords or stamps information, such as price, size, color, and inspection results on tags, tickets, and labels, using rubber stamp or writing instrument," and "[p]astes, staples, sews, or otherwise fastens tickets, tags, labels, or shipping documents to cloth or carpeting"); DOT, No. 209.587-034 ("Marker"), 1991 WL 671802 (G.P.O. 4th ed. rev. 1991) (providing that worker "[m]arks selling price by hand on boxes containing merchandise, or on price tickets," and "[t]ies, glues, sews, or staples price ticket to each article"); DOT, No. 559.687-074 ("Inspector and Hand Packager"), 1991 WL 683797 (stating that individual in that job "[i]nspects molded plastic products, such as bottle caps or tops, for defects, and packs inspected products into shipping cartons"). See Martinez v. Berryhill, No. 3:17CV186, 2018 WL 709971, at *4 (W.D.N.C. Feb. 5, 2018) (unpublished) ("[The p]laintiff argues that the[ jobs of dowel inspector and getterer] are involved with the production process of dowels and incandescent lamps, respectively, and therefore must conflict with the limitation of not working at a production rate pace. The [c]ourt cannot agree, as such a conflict implies that being involved with the production of any good in any way implies a production rate or pace. Nothing in the [DOT]'s description for dowel inspector or getterer has anything to do with

11

rate or pace, which is what the limitation in question was designed to restrict."), aff'd sub nom. Martinez v. Saul, 776 F. App'x 175 (4th Cir. 2019).

Significantly, despite Plaintiff's assertion in this Court that the ALJ's non-production limitation qualified as "impermissibly vague" (Docket Entry 11 at 5), at the hearing before the ALJ, Plaintiff failed to question the VE regarding the meaning of the ALJ's nonproduction restriction or how the jobs the VE cited adhered to that restriction, notwithstanding the fact that Plaintiff had the opportunity (through his attorney) to cross-examine the VE. (See Tr. 61-62.) As a result, Plaintiff has forfeited, in this Court, any challenge on vagueness grounds to the ALJ's non-production restriction. See Coyier v. Saul, Civ. No. 20-1899, 2021 WL 2173425, at *2 (7th Cir. May 27, 2021) (unpublished) (holding that the plaintiff "waived any challenge to the VE's testimony by failing to ask any questions to reveal shortcomings in the job-number estimates"); Shaibi v. Berryhill, 883 F.3d 1102, 1109 (9th Cir. 2017) ("[A]t least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal."); Anderson v. Barnhart, 344 F.3d 809, 814 (8th Cir. 2003) (holding the claimant's failure to raise issue before ALJ "waived [the claim] from being raised on appeal"); Bunton v. Colvin, No. 1:10CV786, 2014 WL 639618, at *5 (M.D.N.C. Feb. 18, 2014)

(unpublished) (finding waiver of issue on judicial review where the plaintiff "failed to mount any opposition . . . to the view that he retained the capacity to do the [jobs proffered by the VE], despite . . . the opportunity . . . to question the VE about . . . those positions"), recommendation adopted, slip op. (M.D.N.C. Mar. 10, 2014) (Schroeder, J); Stepinski v. Astrue, No. CA 11-183, 2012 WL 3866678, at *9-10 (D.R.I. Aug. 6, 2012) (unpublished) ("The [c]ourt views unfavorably the silence of [the p]laintiff's counsel at the hearing regarding the omission about which he now complains. Reversal and remand . . . would encourage other counsel to remain silent in similar circumstances.  This [c]ourt is disinclined to provide such an incentive[ ] . . . [and] finds that [the p]laintiff waived this issue by failing to raise it before the ALJ." (internal citations omitted)), recommendation adopted, 2012 WL 3863812 (D.R.I. Sept. 5, 2012) (unpublished); Young v. United States Comm'r of Soc. Sec., No. CV08-0474, 2009 WL 2827945, at *13 (W.D. La. Sept. 1, 2009) (unpublished) ("[C]laimants should not be permitted to scan the record for implied or unexplained conflicts . . ., and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.").

Even if Plaintiff had not forfeited his right to raise his first issue on review, it still fails on its merits.  In Thomas, the Fourth Circuit held that the ALJ's preclusion of "work

requiring a <u>production rate or demand pace</u>[ ] did not give [the court] enough information to understand what those terms mean." <u>Thomas</u>, 916 F.3d at 312 (emphasis added) (internal quotation marks omitted). Shortly thereafter, the Fourth Circuit found fault with "the ALJ's reference to a '<u>non-production oriented work setting</u>,'" as the Fourth Circuit "d[id] not know what the ALJ intended when she used that phrase," making it "difficult, if not impossible, to evaluate whether restricting [the plaintiff] to a 'non-production oriented work setting' properly accounted for [his] well-documented limitations in [CPP]." <u>Perry v. Berryhill</u>, 765 F. App'x 869, 872 (4th Cir. 2019) (emphasis added).

However, those cases "did not create a categorical rule that failing to define certain terms constitutes a reversible error," <u>Taylor v. Saul</u>, No. 3:19CV468, 2020 WL 4340536, at *6 (E.D. Va. July 27, 2020) (unpublished), but, rather, "clarified that a reviewing court's ability to understand phrases such as 'production rate o[r] pace' in an ALJ's opinion depends on the phrase's context and use," <u>Katherine M. A. v. Saul</u>, No. 3:19CV649, 2021 WL 1207739, at *10 (E.D. Va. Feb. 2, 2021) (unpublished), <u>recommendation adopted</u>, 2021 WL 1206799 (E.D. Va. Mar. 30, 2021) (unpublished). As another judge of this Court has reasoned:

> In [<u>Perry</u>], the Fourth Circuit specifically distinguished its decision in <u>Sizemore v. Berryhill</u>, 878 F.3d 72 (4th Cir. 2017), where it "found that an ALJ had adequately explained a[n RFC] assessment that restricted the claimant, in part, to '<u>non-production jobs</u>,'" as "the ALJ in <u>Sizemore</u> provided additional context, explaining that

14

the claimant could perform work only in a 'low stress' setting, without any 'fast-paced work' or 'public contact,' to account for moderate limitations in [CPP]," which "descriptors helped to explain the restriction intended by the ALJ, and allowed [the Fourth Circuit] to evaluate whether that restriction adequately accounted for the claimant's limitations." Perry, [765 F. App'x at 872] n.1. As in Sizemore, and unlike in Perry, the ALJ here provided the necessary 'descriptors,' limiting [the p]laintiff to 'a low stress, low production environment with no rigid quota and occasional exposure to people.' Accordingly, Perry does not justify remand in this action.

Ross v. Berryhill, No. 1:17CV1145, 2019 WL 1430129, at *1 (M.D.N.C. Mar. 29, 2019) (unpublished) (Schroeder, C.J.) (emphasis added) (internal parenthetical citation omitted).

As in Ross (and consistent with Sizemore, as construed in Perry), the ALJ here added the descriptor of no "quota-based work" to the non-production restriction (Tr. 22), "which permits this Court to understand that Plaintiff cannot always perform certain work tasks within a time allotment," Katherine M. A., 2021 WL 1207739, at *10. Moreover, the ALJ also included the descriptors of "simple, routine, repetitive tasks," a "low stress setting," and only "occasional social interaction . . . with supervisors, coworkers, and the public" (Tr. 22). Those descriptors "help[] to explain the restriction intended by the ALJ." Perry, 765 F. App'x at 872 n.1.

Moreover, Plaintiff's subjective opinion that the ALJ's preclusion of production pace and quota-based work "could" limit Plaintiff to "a sheltered, non-competitive (and thus non-

15

substantial gainful activity) job" (Docket Entry 11 at 5 (citing 20 C.F.R. § 404.1573(c))) does not outweigh the ALJ's reliance on the VE's testimony (and the DOT) that competitive jobs existed in significant numbers which accommodated the ALJ's production and quota restrictions, see Nace v. Colvin, No. EDCV 14-641, 2015 WL 2383833, at *9 (C.D. Cal. May 18, 2015) (unpublished) ("[The p]laintiff's personal opinion is not a reliable source of job information, and she cites no legal authority for her contention that the [c]ourt should overlook the two designated sources of reliable job information in this case - the [DOT] and the VE's testimony - in favor of [the plaintiff's] own subjective beliefs.").

In short, Plaintiff's first issue on review fails as a matter of law.

## 2. Opinions of NP Santos-Burks

Plaintiff's second and final assignment of error maintains that "[t]he ALJ erred in his evaluation of the medical opinion evidence provided by [NP] Santos-Burks." (Docket Entry 11 at 6 (bold font and block formatting omitted).) More specifically, Plaintiff notes that NP Santos-Burks opined that Plaintiff's ulcerative pancolitis symptoms would require Plaintiff "to lie down at unpredictable intervals" two to three times per month (id. (citing Tr. 995)), take "frequent bathroom breaks during a flare" (id. (citing Tr. 996)), and miss work "about four days per month"

16

(id. (citing Tr. 996)), and contends that those opinions qualify as "disabling" in light of the VE's testimony that "being off-task more than 3% of the workday or missing even one day of work per month would preclude competitive employment" (id. (citing Tr. 60-61)). Plaintiff faults the ALJ for finding those opinions "not . . . persuasive," as "lack[ing] support from the evidentiary record, as discussed in the [ALJ's] decision" (id. (citing Tr. 26)), because it is unclear exactly what lack of support the ALJ is referencing" (id. at 7), given that "the ALJ note[d] the supportive objective evidence in the form of the colonoscopy demonstrating severe pancolitis" (id. (citing Tr. 26)), Plaintiff's testimony that "he use[d] the bathroom 5 to 7 times a day and that stress c[ould] cause flares" (id. (citing Tr. 23)), and "many instances [in the record denoting] frequent bathroom usage" (id. (citing Tr. 24-25)). According to Plaintiff, "[t]he ALJ failed to correctly apply the factors contemplated by the regulations [for the evaluation of medical opinions]," and his "findings regarding the consistency and supportability of [NP Santos-Burks's] opinion[s] are not properly explained and supported." (Id. at 8-9.) Those contentions fall short.

For benefits applications filed on or after March 27, 2017 (such as Plaintiff's (see Tr. 171-72)), the SSA has enacted substantial revisions to the regulations governing the evaluation of opinion evidence, see Revisions to Rules Regarding the

17

Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, ALJs need not assign an evidentiary weight to medical opinions or accord special deference to treating source opinions. See 20 C.F.R. § 404.1520c(a) (providing that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from [a claimant's] medical sources"). Instead, an ALJ must determine and "articulate in [the] . . . decision how persuasive [he or she] find[s] all of the medical opinions . . . in [a claimant's] case record." 20 C.F.R. § 404.1520c(b) (emphasis added). Moreover, when a medical source provides more than one opinion, the ALJ can evaluate the persuasiveness of such opinions "together in a single analysis" and need not articulate how he or she considered those opinions "individually." 20 C.F.R. § 404.1520c(b)(1).

In evaluating the persuasiveness of an opinion, the SSA deems supportability and consistency "the most important factors" and thus the ALJ must address those two factors in evaluating the persuasiveness of an opinion. 20 C.F.R. § 404.1520c(b)(2).[9] The ALJ must address the three other persuasiveness factors — the

_____

[9] "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. § 404.1520c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. § 404.1520c(c)(2).

18

nature and extent of the medical source's relationship with the claimant and area of specialization, as well as the catch-all "other factors that tend to support or contradict" the opinion, 20 C.F.R. § 404.1520c(c)(3)-(5) — only when the ALJ finds two or more opinions about the same issue "[e]qually persuasive" in terms of supportability and consistency, 20 C.F.R. § 404.1520c(b)(3).

On February 23, 2023, NP Santos-Burks, Plaintiff's gastroenterology primary care provider, completed a preprinted form entitled "Medical Opinion Re: Ability to Do Work-Related Activities (Physical)" (Tr. 995 (bold font, underscoring, and capitalization omitted)), on which she opined that Plaintiff's "ulcerative pancolitis" (Tr. 996) did not limit his ability to lift and carry (see Tr. 995) or his "[m]aximum ability" to sit, stand, and walk (id.), but did require him to "need the opportunity to shift at will from sitting or standing/walking" (id. (italics omitted)). NP Santos-Burks further opined that Plaintiff's pancolitis would result in Plaintiff "need[ing] to lie down at unpredictable intervals" two to three times per month (id.), limit him to occasional twisting, stooping, crouching, and climbing (see Tr. 996), and cause him to "need frequent bathroom breaks when he has a flare" and to miss work "[a]bout four days per month" (id.), but would not result in manipulative or environmental limitations (see id.). NP Santos Burks attached to her form opinions a treatment

19

note from January 10, 2023 (Tr. 997-1003), and a copy of Plaintiff's colonoscopy from December 28, 2021 (Tr. 1004-06).

The ALJ summarized NP Santos-Burks's above-described opinions (see Tr. 25-26), and then noted that the "colonoscopy in December 2021 showed severe pan colitis evidenced by severe erythema, edema, exudates, some touch friability, and diffuse confluent mucosa distribution, indicating mild activity, negative for dysplasia ([Tr. 995-1006])" (Tr. 26).[10] The ALJ thereafter stated that he "d[id] not find [NP Santos Burks's] opinion[s] persuasive considering [they] lack[] support in the evidentiary record, as discussed [in the ALJ's decision]." (Id. (emphasis added).) Earlier in the decision, the ALJ provided the following analysis:

> A colonoscopy in December 2021 showed [Plaintiff] had severe ulcerative pancolitis. . . . He received Remicade infusions every 8 weeks. In November 2022, [he] reported he had only 1 to 2 bowel movements a day on Remicade but experienced diarrhea[] if he ate the wrong things, such as dairy products and coffee. Otherwise, the condition appeared to be in clinical remission. . . . At a visit in January 2023, [he] reported he had normal bowel movements once or twice a day without any hematochezia, mucus, or tenesmus. His appetite increased and he denied nausea or vomiting. . . . His physical exam was unremarkable. The provider advised [Plaintiff] to avoid stressful events, eat more fiber, and avoid NSAIDs. He switched to Humira instead of Remicade.

_____

[10] Plaintiff points out that, "[i]n the ALJ's summary of [NP Santos Burks's] opinion[s], the ALJ note[d] the supportive objective evidence in the form of the colonoscopy demonstrating severe pancolitis" and thus deems it "unclear exactly what evidence the ALJ is referencing as supposedly contradicting [NP Santos Burks's] opinion[s]." (Docket Entry 11 at 7 (citing Tr. 26).) Plaintiff's argument glosses over the fact that NP Santos Burks attached a copy of Plaintiff's December 2021 colonoscopy to her form opinions (see Tr. 1004-06). Thus, the ALJ did not discuss the colonoscopy to highlight objective evidence he believed conflicted with NP Santos Burks's opinions, but, rather, to thoroughly summarize NP Santos Burks's submission.

. . .

In August 2022, [he] stated he wanted to schedule his
therapist visits to align with his college schedule. <u>He
was working toward an associate degree</u>.

. . .

[Plaintiff] <u>appeared able to perform activities of daily
living</u>. He stated he did not leave home due to colitis.
In September 2022, [he] reported he was <u>taking a trip out
of state with his motorcycle club</u>. The record supports
the [RFC], which reasonably accounts for [his]
impairments with a reduced exertional level and
limitations on work activities that might exacerbate his
symptoms. The [ALJ] finds his <u>digestive/bathroom issues
could be accommodated by the regular/customary work
breaks, considering [Plaintiff]'s reports to his
providers</u>.

(Tr. 24-25 (internal parenthetical citations omitted) (emphasis

added).)

That earlier analysis by the ALJ, to which he referred in his

evaluation of the persuasiveness of NP Santos Burks's opinions (<u>see</u>

Tr. 26), makes clear he considered both the supportability and the

consistency of her opinions as required by Section

404.1520c(b)(2).[11]   With regard to supportability, i.e., "[t]he

_____

[11] Plaintiff contends that, "[t]hough the case dealt with the prior
regulations [governing evaluation of medical opinions], the Fourth Circuit
recently reiterated in _Dowling_ [_v. Commissioner of Soc. Sec._, 986 F.3d 377 (4th
Cir. 2021),] that it must 'be apparent from the ALJ's decision that he
meaningfully considered each of the factors before deciding how much weight to
give the opinion.'" (Docket Entry 11 at 7 (quoting <u>Dowling</u>, 986 F.3d at 385).)
According to Plaintiff, although "the new regulations require the ALJ to
articulate how 'persuasive' the opinion is as opposed to 'weighing' the medical
opinion, [] the factors that the ALJ is to consider remain the same." (<u>Id.</u>
(citing 20 C.F.R. §§ 404.1520c(c), 404.1527(c)).)  As discussed above, however,
the new regulations governing opinion evidence make abundantly clear that,
although an ALJ must address supportability and consistency, the ALJ need not
address the remaining factors, i.e., the nature and extent of the medical
source's relationship with the claimant, the source's area of specialization, and
the catch-all "other factors that tend to support or contradict" the opinion, 20
C.F.R. § 404.1520c(c)(3)-(5), unless the ALJ finds two or more opinions about the

21

extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation," Revisions to Rules, 82 Fed. Reg. at 5853; <u>see also</u> 20 C.F.R. § 404.1520c(c)(1), the ALJ noted Plaintiff's unremarkable physical examinations during visits with NP Santos Burks, as well as Plaintiff's reports to NP Santos Burks of normal bowel movements only one to two times per day, diarrhea only when he consumed inadvisable food and drink, no nausea and vomiting, and increased appetite (<u>see</u> Tr. 24-25). Concerning consistency, i.e., "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim," Revisions to Rules, 82 Fed. Reg. at 5853; <u>see also</u> 20 C.F.R. § 404.1520c(c)(2), the ALJ observed that Plaintiff remained able to perform daily activities, attended college classes, and traveled out of town with his motorcycle club (<u>see</u> Tr. 24-25).

That analysis suffices under the applicable regulations. <u>See McCartney v. Apfel</u>, 28 F. App'x 277, 279-80 (4th Cir. 2002) (rejecting challenge to ALJ's finding for lack of sufficient detail where other discussion in decision adequately supported finding and stating "that the ALJ need only review medical evidence once in his decision"); <u>Charles V. W. v. Kijakazi</u>, No. 1:22CV471, 2023 WL

---

same issue "[e]qually persuasive" in terms of supportability and consistency, 20 C.F.R. § 404.1520c(b)(3). As the ALJ here made no such "equally persuasive" finding (<u>see</u> Tr. 25-26), neither the applicable regulations, nor <u>Dowling</u> (which interpreted the prior version of the regulations), required the ALJ to address factors beyond supportability and consistency.

5985437, at *6 (M.D.N.C. Sept. 14, 2023) (unpublished) ("Although the ALJ did not discuss [relevant evidence] in the same paragraph in which he analyzed [the mental health provider]'s opinions, the Court considers the ALJ's entire decision when reviewing for substantial evidence." (internal parenthetical citation omitted)); Kiernan v. Astrue, No. 3:12CV459, 2013 WL 2323125, at *5 (E.D. Va. May 28, 2013) (unpublished) (observing that, where an "ALJ analyzes a claimant's medical evidence in one part of his decision, there is no requirement that he rehash that discussion" in other parts of his analysis). Put simply, the ALJ's decision permits the Court to trace the path of the ALJ's reasoning in finding NP Santos Burks's opinions not persuasive, and, thus, Plaintiff's second issue on review falls short.

### III. CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **AFFIRMED**, and that this action is **DISMISSED** with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

July 12, 2024